IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

HAROLD BLACH, JR.,          *

     Plaintiff,          *

vs.                       *

AFLAC, INC.,            *        CASE NO.4:15-MC-5

     Garnishee,          *

SAL DIAZ-VERSON,       *

     Defendant.

O R D E R

In an attempt to avoid collection of a valid judgment, Sal Diaz-Verson has filed a traverse to Plaintiff's garnishment action.  In the garnishment action, Plaintiff Harold Blach seeks to garnish regular payments made from AFLAC, Inc. to Diaz-Verson.  Diaz-Verson seeks dismissal of the garnishment action claiming that this Court does not have jurisdiction, that the Georgia garnishment statute is unconstitutional, and that the Court should abstain from hearing this matter due to another related action pending in state court.  He also argues that the payments that Blach seeks to garnish are exempt from garnishment.  All of Diaz-Verson's arguments lack merit.  Accordingly, Diaz-Verson's motion to dismiss and traverse (ECF Nos. 5 & 6) are denied.

FACTUAL BACKGROUND

On March 12, 2012, the Northern District of Alabama issued a $158,343.40 judgment in favor of Blach against Diaz-Verson. On October 6, 2015, Blach duly registered the judgment in this Court pursuant to 28 U.S.C. § 1963.[1]   Blach then filed the present garnishment action against Diaz-Verson's former employer, AFLAC, Inc.   Diaz-Verson does not dispute the validity of the Middle District of Alabama judgment against him in favor of Blach; nor does he deny that his former employer AFLAC sends bimonthly payments from its office in Columbus, Georgia to him in Florida.   Instead, he argues that Blach's unsuccessful attempts to domesticate his Alabama judgment and garnish the AFLAC payments in Georgia state courts doom his present action in this Court.   Thus, an examination of those state court proceedings is necessary.

I.   **First State Court Action**

Blach first sought to domesticate his Alabama judgment in Muscogee County Superior Court on March 8, 2013.   Diaz-Verson received notice of the domestication and, through his attorney Robert Frey, moved to dismiss the proceeding for lack of personal jurisdiction.   Diaz-Verson argued that he has been a full time resident of Florida since 2004 and, therefore, the

---

[1] Section 1963 provides in part that "[a] judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . ."   28 U.S.C. § 1963.

Georgia courts do not have personal jurisdiction over him under Georgia's long-arm statute.  Blach did not respond to the motion to dismiss and the state court granted the motion.  Blach filed a motion for reconsideration which the court denied, holding that Georgia's long-arm statute does not provide Georgia courts with personal jurisdiction over Diaz-Verson.

## II.  Second State Court Action

On August 20, 2014, Blach again tried to domesticate his Alabama judgment in a Georgia state court.  Blach attempted to send notice of the domestication to Diaz-Verson, but Diaz-Verson claims that he did not receive the notice because it was sent to an incorrect address.  On September 24, 2014, the Muscogee County Superior Court entered an order domesticating the Alabama judgment in Georgia.

In January 2015, Blach filed garnishment proceedings against AFLAC based on the domesticated judgment.  Frey, who no longer represented Diaz-Verson, filed a third-party claim against him.  After several months of garnishment and two traverses filed by Diaz-Verson, the Muscogee County Superior Court held a hearing on Diaz-Verson's traverses and the third-party claim.

At the hearing, Frey took the position that the Georgia garnishment statute was unconstitutional and dismissed his third-party garnishment claim.  Regarding Blach's garnishment,

the court held that the Alabama judgment was not properly domesticated in Georgia because Diaz-Verson did not receive notice of the domestication.  The court vacated the order domesticating the judgment and returned all garnished funds to Diaz-Verson.  The court offered Blach the opportunity to file a motion as to why his failure to send notice to Diaz-Verson could be cured.  Blach voluntarily dismissed the action.

## III. The Present Federal Action

In October 2015, Blach registered his Alabama judgment in this Court, pursuant to 28 U.S.C. § 1963.  He filed this garnishment action against AFLAC on December 18, 2015.  On December 21, 2015, Diaz-Verson received notice of the garnishment action with a list of possible exemptions he could claim and the procedure for claiming them.  Two days later, this Court issued a summons of garnishment to AFLAC.  On December 26, 2015, Diaz-Verson received a copy of this summons and another list of possible exemptions.  Diaz-Verson filed the present traverse and motion to dismiss and this Court held a hearing on the motion on January 27, 2016.  At the hearing, AFLAC's attorney stated that AFLAC withheld twenty-five percent of Diaz-Verson's January 15 payment and would withhold twenty-five percent from his January 31 and February 15 payments.

**IV.  Robert Frey's Relationship with Diaz-Verson and Judgment**

Frey is the registered agent for a limited liability Florida corporation that Diaz-Verson manages as the managing member.  Pl.'s Resp. Attach. 5, Electronic Articles of Organization for Florida Limited Liability Company 2, ECF No. 8-5.  Additionally, Blach claims that Frey currently represents Diaz-Verson in Muscogee County Superior Court in an unrelated dispute.

In 2010, Frey unsuccessfully defended Diaz-Verson against Porter Bridge Loan Company.  In that action, Porter Bridge domesticated a judgment in Georgia state court and filed garnishment proceedings against AFLAC in this Court.  Porter Bridge sought to garnish the same bimonthly AFLAC payments at issue here.  Frey represented Diaz-Verson in a traverse to the garnishment.  Diaz-Verson argued that the payments from AFLAC are exempt from garnishment because they are retirement benefits.  This Court rejected that argument and held that twenty-five percent of the payments is subject to garnishment. *AFLAC, Inc. v. Diaz-Verson*, No. 4-11-CV-81 (CDL), 2012 WL 1903904, at *5-7 (M.D. Ga. May 25, 2012).

Frey continued to represent Diaz-Verson in his appeal of that order.  On September 25, 2012, Diaz-Verson and Porter Bridge entered a confidential settlement agreement and Diaz-Verson dismissed his appeal.  A month or two after the

settlement and dismissal, Porter Bridge assigned its judgment against Diaz-Verson to Frey. Def.'s Mot. to Dismiss Ex. 6, Assignment of J., ECF No. 5-17. Frey did not seek to collect this judgment from Diaz-Verson until January 2015, when he filed the third-party claim in Blach's state court garnishment action which he subsequently dismissed.

On December 30, 2015, several days after Diaz-Verson received notice of Blach's garnishment proceedings in this Court, Frey filed garnishment proceedings against AFLAC in Muscogee County Superior Court. AFLAC received summonses of garnishment from this Court in the present action and from the Muscogee County Superior Court in Frey's action. AFLAC is holding the garnished payments and awaiting instruction regarding where to deposit the funds. Blach has filed a third-party motion to stay the Muscogee County Superior Court action.

## V.   Diaz-Verson's Objections to Garnishment

Diaz-Verson asserts the following objections to the garnishment: (1) the Court does not have personal jurisdiction over Diaz-Verson and is collaterally estopped from determining that it does not need personal jurisdiction over Diaz-Verson; (2) res judicata bars this action; (3) Georgia's garnishment statute is unconstitutional facially and as-applied; (4) the Court should abstain because of Frey's state court action or dismiss Blach's garnishment because Frey's claim is superior;

6

and (5) the AFLAC payments are retirement benefits, exempt from garnishment under Georgia law.[2]

DISCUSSION

I.  **Personal Jurisdiction Over Diaz-Verson**

Diaz-Verson argues that for this Court to exercise jurisdiction in this garnishment action consistent with due process, it must have personal jurisdiction over him. Diaz-Verson further argues that this Court cannot decide the jurisdiction issue because it has already been decided in Diaz-Verson's favor by a state court. Diaz-Verson mischaracterizes what happened in state court, misunderstands the principle of collateral estoppel, and mistakenly confuses personal jurisdiction that is necessary to obtain a judgment against him with jurisdiction in a garnishment action to satisfy a previously entered judgment with property located in this Court's jurisdiction.

A.  Collateral Estoppel Does Not Apply

Diaz-Verson argues that Blach is precluded from relitigating whether the Court needs personal jurisdiction over him because the Muscogee County Superior Court assumed that it did and held that Georgia courts lack jurisdiction over Diaz-Verson. "In considering whether to give preclusive effect to

---

[2] It is not clear that Diaz-Verson used the proper procedure for raising all of these objections. But for the sake of judicial economy, the Court addresses all of the objections in this Order.

state-court judgments under . . . collateral estoppel, the federal court must apply the rendering state's law of preclusion." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). To establish collateral estoppel under Georgia law, Diaz-Verson bears the burden of demonstrating that:

> (1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction.

*Id.* at 1264. Diaz-Verson has failed to establish that an identical issue was actually litigated and necessarily decided in the Muscogee County Superior Court.

The Muscogee County Superior Court held that Georgia courts lack personal jurisdiction over Diaz-Verson under Georgia's long-arm statute. The Court therefore dismissed Blach's complaint to domesticate his Alabama judgment. But Diaz-Verson offers no evidence that the state court analyzed whether personal jurisdiction over Diaz-Verson was necessary for the court to exercise jurisdiction in a garnishment action based on a valid judgment when the property to be garnished is located in the State of Georgia. The state court seems to have merely assumed that it needed personal jurisdiction over Diaz-Verson. Thus, whether personal jurisdiction is required was not "actually litigated" or "necessarily decided" by the state court. *See Cleland v. Gwinnett Cty.*, 226 Ga. App. 636, 638, 487

S.E.2d 434, 436-37 (1997) (holding that where one party's interpretation of an ordinance was accepted by the court without contest, the issue was not "actually litigated"); *Strong*, 651 F.3d at 1268 (noting that the "necessarily decided" prong requires that the issue was "squarely addressed").

Here, the Court must determine whether personal jurisdiction over Diaz-Verson is required to register a foreign federal judgment under a federal statute and enforce the judgment through garnishment of property located in Georgia. The state court in Blach's first state court action did not address Georgia garnishment law at all. And the state court's assumption that personal jurisdiction is necessary under Georgia domestication of judgment law does not control whether it is necessary to register a judgment under a federal statute or whether it is necessary in a garnishment action when the property is located here. Thus, this Court is not collaterally estopped from deciding these issues.

B.  The Court Does Not Need Personal Jurisdiction Over Diaz-Verson

"In an action to execute on a judgment, due process concerns are satisfied, assuming proper notice, by the previous rendering of a judgment by a court of competent jurisdiction." *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010); *see also Frontera Res. Azerbaijan Corp. v. State Oil Co.*

*of the Azerbaijan Republic*, 582 F.3d 393, 398 (2d Cir. 2009) (holding that the "district court did not err by treating jurisdiction over either [the defendant] or [the defendant's] property as a prerequisite to the enforcement of [the plaintiff's] petition.").

State courts more frequently address post-judgment garnishment than federal courts. They consistently hold "that no jurisdictional basis for proceeding against the judgment debtor need be shown before a foreign judgment will be recognized or enforced in a given state." *Lenchyshyn v. Pelko Elec., Inc.*, 281 A.D.2d 42, 48, 723 N.Y.S.2d 285, 290 (N.Y. App. Div. 2001) (citing cases from fifteen states, including Georgia, that support this claim). According to the Georgia Supreme Court "if it can be shown that [Diaz-Verson] has property in this state, there would be no difficulty in enforcing the [Alabama] judgment against him here." *See Williamson v. Williamson*, 247 Ga. 260, 263, 275 S.E.2d 42, 45 (1981) (per curiam). "Personal jurisdiction over [Diaz-Verson] would, of course, not be required." *Id.*

Diaz-Verson's argument to the contrary and reliance on *Shaffer v. Heitner*, 433 U.S. 186, 208-12 (1977), ignores the difference between prejudgment and post-judgment garnishment actions. *See Smith v. Lorillard, Inc.*, 945 F.2d 745, 746 (4th Cir. 1991) (holding that *Shaffer* does not require the district

10

court to "engage in a new personal jurisdiction balancing test *after the underlying judgment is entered* in order to proceed with and enforce garnishment orders[.]") (alteration in original).   *Shaffer* and the garnishment case it overrules, *Harris v. Balk*, 198 U.S. 215, 227 (1905), are prejudgment cases, meaning that the defendant's liability to the plaintiff had not been adjudicated when the plaintiff brought an action against the defendant's property.[3]  *Shaffer*, 433 U.S. at 200-01; *Harris*, 198 U.S. at 227.   To the contrary, here, the Middle District of Alabama had personal jurisdiction over Diaz-Verson and held that Diaz-Verson is indebted to Blach.   Thus, this case is distinguishable from *Shaffer* and its overruling of *Harris*.

Moreover, *Shaffer* suggests that the Court does not need personal jurisdiction for post-judgment garnishment.   The Supreme Court explained that "[u]nless the plaintiff has obtained a judgment establishing his claim against the principal defendant, his right to 'represent' the principal defendant in an action against the garnishee is at issue."  *Shaffer*, 433 U.S. at 201 n.18 (internal citations omitted).   But:

> Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, *whether or not that*

---

[3] The prejudgment posture of *Harris* is more difficult to recognize than that of *Shaffer*.   The Court is clear, however, that the defendant debtor in *Harris* never appeared to litigate the question of his liability to the plaintiff prior to the garnishment.   *Id*. at 227-29.

> *State would have jurisdiction to determine the existence of the debt as an original matter*.

*Id.* at 210 n.36 (emphasis added). Here, a court of competent jurisdiction determined that Diaz-Verson is a debtor of Blach. Thus, Blach may enforce that judgment in this Court against Diaz-Verson's local property, regardless of whether the Court has personal jurisdiction over Diaz-Verson.

*Shaffer* also recognized that allowing post-judgment garnishment based solely on the court's jurisdiction over the defendant's property is necessary to prevent defendants from avoiding judgments by keeping their property in states where they are not subject to personal jurisdiction. *Id.* at 210 (emphasizing that defendants cannot move their property out of state to avoid judgment because "[t]he Full Faith and Credit Clause . . . makes the valid in personam judgment of one State enforceable in all other States").

In sum, the Court does not need personal jurisdiction over Diaz-Verson to enforce a judgment against his in-state property. It is clear that AFLAC holds property here belonging to Diaz-Verson. Thus, this Court has jurisdiction over the present action to garnish that property. Diaz-Verson's traverse and motion to dismiss based on lack of personal jurisdiction over him are denied.

## II.  Res Judicata

To the extent that Diaz-Verson makes a res judicata argument based on Blach's state court filings, the Court finds those arguments unpersuasive.  The Court applies the res judicata law of Georgia.  *Strong*, 651 F.3d at 1263.  To establish that this action is barred, Diaz-Verson must show the "(1) identity of the cause of action; (2) identity of the parties or their privies; and (3) previous adjudication on the merits by a court of competent jurisdiction." *Starship Enters. of Atl., Inc. v. Coweta Cty.*, 708 F.3d 1243, 1253-54 (11th Cir. 2013).  The Court finds that the previous state court actions do not constitute final adjudications on the merits of the same cause of action asserted in this federal action.

Even if those actions were deemed to have been finally adjudicated, which is doubtful, it is clear that registering a judgment in federal court under § 1963 and domesticating a judgment in state court are two distinct procedures that Blach may use to enforce his judgment.  *See Meridian Investing & Dev. Corp. v. Suncoast Highland Corp.*, 628 F.2d 370, 372-73 (11th Cir. 1980) ("[I]n cases . . . in which execution of the federal court judgment is pursued through registration in another federal district court, the filing of concurrent state and federal suits may be the judgment creditor's only effective course of action.") (internal citations omitted).  Thus, res

judicata principles do not prevent Blach from pursuing collection of his judgment by registering it in federal court.

Finally, the Court rejects any argument that res judicata bars Blach's garnishment proceedings. Under Georgia law, Blach must file a new summons of garnishment each time he seeks to collect a percentage of the AFLAC payments and may do so until the judgment is paid. O.C.G.A. § 18-4-63; *see also* O.C.G.A. § 18-4-110 (providing that continuing garnishment is only available if the garnishee is the defendant's current employer). Diaz-Verson's reference to "improper and duplicative garnishment actions" demonstrates a misunderstanding of garnishment. Def.'s Mem. in Supp. of Traverse and Mot. to Dismiss 2, ECF No. 5-1. Accordingly, the Court denies Diaz-Verson's motion on res judicata grounds.

## III. Georgia's Garnishment Statute

Diaz-Verson argues that the Court should dismiss this action because Georgia's garnishment statute violates procedural due process facially and as-applied to him.[4] He maintains that because the statute does not require notice to the debtor of exemptions from garnishment or that a prompt hearing be held

---

[4] Blach did not argue that Diaz-Verson failed to comply with the procedure for challenging the constitutionality of a state statute under Federal Rule of Civil Procedure 5.1, but there is no evidence that Diaz-Verson complied with the rule. The Court concludes, however, that the attorney general is not prejudiced by the Court's ruling on this issue because the Court rejects Diaz-Verson's constitutional challenge.

regarding the application of those exemptions, the statute is constitutionally infirm.  For purposes of deciding this motion, the Court assumes that Diaz-Verson has a constitutionally protected property interest in his payments from AFLAC.

Generally, due process requires "notice and opportunity for hearing appropriate to the nature of the case."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).  To determine the extent of the notice and hearing that are appropriate, the Court considers the following factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *J.R. v. Hansen*, 736 F.3d 959, 966 (11th Cir. 2013) (quoting *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

A.    Due Process Notice Requirement

Applying these factors, several circuits have held that due process entitles a defendant debtor to notice that includes a list of applicable exemptions to garnishment and information about the procedures for claiming these exemptions.  *E.g., Reigh v. Schleigh*, 784 F.2d 1191, 1194-95 (4th Cir. 1986); *Dionne v.*

*Bouley*, 757 F.2d 1344, 1351-52 (1st Cir. 1985); *Finberg v. Sullivan*, 634 F.2d 50, 58 (3d Cir. 1980) (en banc).   For the purpose of determining this traverse and motion to dismiss, the Court assumes that due process requires notice that includes information about exemptions and the procedure for claiming them.

Diaz-Verson argues that Georgia's garnishment statute is facially unconstitutional because it does not require that the defendant receive notice of exemptions or the procedure for claiming them:

> [Notice] shall consist of a copy of the summons of garnishment or of a document which includes the names of the plaintiff and the defendant, the amount claimed in the affidavit of garnishment, a statement that a garnishment against the property and credits of the defendant has been or will be served on the garnishee, and the name of the court issuing the summons of garnishment.

O.C.G.A. § 18-4-64(c).   But it is undisputed that Diaz-Verson received notice of exemptions here.   Under these circumstances, the Court rejects Diaz-Verson's facial challenge based on inadequate notice.

First, it is doubtful that Diaz-Verson has standing to assert a facial challenge.   Generally, "a party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 154-55 (1979) (noting the limited

exception to this rule in the First Amendment context). Here, Diaz-Verson's due process rights have not been adversely impacted by the statute's failure to require notice of exemptions because he received constitutionally sufficient notice.

Even assuming, however, that the Court has jurisdiction to entertain the facial challenge, the Court recognizes its "duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." *Id.* at 154. Here, the Court need not speculate about the constitutionality of the Georgia garnishment statute in all contexts to determine that Diaz-Verson received due process in this case regarding notice of his right to claim exemptions. As mentioned, it is undisputed that he received such notice. Thus, the Court declines to hold Georgia's garnishment statute facially unconstitutional based on its failure to require notice of exemptions. *See Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 461 n.3 (11th Cir. 1996) (noting that declining to hold a statute facially unconstitutional without concrete facts restrains judicial interference with other political branches and reduces the risk of constitutional error). Moreover, Diaz-Verson has no as-applied challenge based on lack of notice of his right to claim exemptions because he received such notice.

B.   Due Process Hearing Requirement

In addition to his claim that the Georgia garnishment statute is unconstitutional based on its failure to require notice regarding exemptions, Diaz-Verson also argues that the statute is unconstitutional facially and as-applied to him because it does not provide a prompt procedure for *hearing* the defendant's exemption claims.   Due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).   In post-judgment garnishment proceedings, courts consistently reject claims that due process requires a hearing before a debtor's funds are garnished. *McCahey v. L.P. Inv'rs*, 774 F.2d 543, 550 (2d Cir. 1985) (noting that a pre-garnishment hearing "is not constitutionally required even in the case of pre-judgment attachments" and thus "it can hardly be required where the creditor's claim has been finally confirmed by a court.").   But several courts require that defendants are given a prompt post-garnishment hearing regarding exemption claims. *See, e.g., Finberg*, 634 F.2d at 59 (requiring such a hearing).

1.   *As-Applied Challenge*

In support of his as-applied challenge to the Georgia garnishment hearing procedure, Diaz-Verson appears to rely on the fact that he did not receive a hearing regarding his exemption claim until several days after AFLAC garnished his

first payment.[5]   But Diaz-Verson is not entitled to a pre-garnishment hearing.   And under the *Mathews* test, Diaz-Verson's hearing satisfied due process.

First, Diaz-Verson's interest in twenty-five percent of his bimonthly AFLAC payments is far less compelling than a debtor's interest in a primary bank account used for food and housing payments.   *Cf. id.* at 58 (finding the debtor's interest in a bank account used for basic requirements of life compelling, especially when the funds may be exempt).   Second, the risk of erroneously depriving Diaz-Verson of exempt property is exceptionally low in this case because the Court held in 2012 that the AFLAC payments are not exempt from garnishment. Finally, considering that Blach has been trying to collect on his judgment for the past three years, his interest "in a prompt and inexpensive satisfaction of the debt" is particularly strong.   *Aacen v. San Juan Cty. Sheriff's Dep't*, 944 F.2d 691, 696 (10th Cir. 1991).   Thus, weighing the factors, Diaz-Verson's hearing twelve days after his first payment was garnished satisfies due process.

### 2.   *Facial Challenge*

Despite the fact that Diaz-Verson filed his exemption claim with his initial traverse and the Court promptly held a hearing

---

[5]  Diaz-Verson received notice of this action on December 21, 2015. AFLAC garnished his payment on January 15, 2016.  Diaz-Verson filed a traverse on January 19 and his hearing was held on January 27.

on that claim, Diaz-Verson again attempts to assert the rights of hypothetical defendants by bringing a facial challenge.  For the same reasons listed above, the Court declines to speculate about the statute's application to parties not before the Court. Accordingly, Diaz-Verson's traverse and motion to dismiss based on a violation of due process are denied.

## IV.  Abstention and Frey's Judgment

Diaz-Verson argues that the Court should abstain from exercising jurisdiction over this case under the *Colorado River* doctrine due to Frey's pending state court garnishment action.[6] In the alternative, Diaz-Verson asserts that the Court should dismiss this proceeding because Frey has a superior claim against Diaz-Verson.

"Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ambrosia Coal and Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2009) (alteration in original) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  But "in situations involving the contemporaneous exercise of concurrent jurisdictions," it may be appropriate for

---

[6] Diaz-Verson initially argued that the Court should abstain under the *Colorado River* doctrine because Blach's second state court action was still pending.   After Diaz-Verson made this argument, Blach filed a voluntary dismissal of his second state court action.   Pl.'s Resp. Attach. 2, Voluntary Dismissal, ECF No. 8-2.   Thus, the second state court filing is not concurrent with this action and does not provide a reason to abstain under *Colorado River*.

the Court to abstain to conserve judicial resources and avoid duplicative litigation. *Colo. River Water*, 424 U.S. at 817. The Court may, however, "abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances." *Ambrosia Coal*, 368 F.3d at 1328 (quoting *Colo. River Water*, 424 U.S. at 818). To determine if exceptional circumstances exist the Court considers: (1) whether either court has assumed jurisdiction over the property; (2) the inconvenience of litigating in this Court; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the actions were filed; (5) whether state or federal law will be applied; and (6) the adequacy of the state court to protect the parties' rights. *Id.* at 1331.

Here, neither Court has assumed jurisdiction over the property and both forums are equally convenient for the parties. Thus, the first two factors are neutral regarding abstention. The third factor is also neutral because the risk of piecemeal litigation is not "abnormally excessive or deleterious" in this case. *Id*. at 1333. Here, Blach filed a motion to stay the state court case. If granted, that motion could obviate any concern of piecemeal litigation.

The fourth factor weighs against abstention. Blach registered his judgment in this Court on October 6, 2015 and filed the present garnishment action on December 18, 2015. Frey

did not file his state court garnishment action in Muscogee County Superior Court until December 30, 2015. This Court held a hearing regarding Diaz-Verson's traverse and motion to dismiss on January 27, 2016. The Muscogee County Superior Court did not hear Diaz-Verson's similar state court motion until February 12. Thus, this case was filed first and these proceedings appear to be more developed.

The fifth factor slightly favors abstention because Georgia law applies to this case. This factor is mitigated, however, by this Court's inherent authority to enforce Blach's validly registered federal judgment. *See McKee-Berger-Mansueto, Inc. v. Bd. of Educ. of the City of Chicago*, 691 F.2d 828, 831 (7th Cir. 1982) (holding that the district court properly exercised jurisdiction over proceedings to satisfy a judgment and disperse funds to creditors even though some of the creditors had filed garnishment proceedings in state court). Finally, the sixth factor is neutral because both courts can adequately protect the rights of the parties. With only one factor weighing in favor of abstention and another factor weighing strongly against, Diaz-Verson fails to establish extraordinary circumstances that make abstention appropriate.

Additionally, the Court will not dismiss this action based on Frey's alleged claim against Diaz-Verson because Frey's claim is not before the Court. Frey has not complied with Georgia's

procedure for asserting his claim in this action. Georgia law gives Frey the right to assert a third-party claim against Diaz-Verson "[a]t any time before judgment is entered on the garnishee's answer or money or other property subject to garnishment is distributed." O.C.G.A. § 18-4-95. But, until Frey complies with the procedure provided in the Georgia garnishment statute, the Court is without jurisdiction to consider his claim. *See Lamb v. T-Shirt City, Inc.*, 272 Ga. App. 298, 302, 612 S.E.2d 108, 111 (2005) (holding that "by failing 'procedurally to invest themselves with the prerequisite claimant status, [the claimants rendered] the trial court . . . without jurisdiction to consider their claim.'") (quoting *Nat'l Loan Investors L.P. v. Satran*, 231 Ga. App. 21, 22, 497 S.E.2d 627, 628 (1998))). Diaz-Verson makes no argument that he has standing to assert Frey's claim on Frey's behalf. Thus, the Court finds that Frey's state court claim does not support abstention here.

## V.   Exemption

The Court reaffirms its holding that Diaz-Verson's bimonthly payments from AFLAC are subject to garnishment. In *AFLAC, Inc. v. Diaz-Verson*, No. 4-11-CV-81 (CDL), 2012 WL 1903904, at *5-7 (M.D. Ga. May 25, 2012), the Court issued a thorough opinion addressing the issue. The Court stands by its

previous holding and confirms that twenty-five percent of the bimonthly AFLAC payments is subject to garnishment.

## CONCLUSION

Diaz-Verson owes a valid and enforceable judgment. Blach has the right to pursue collection of that judgment in this Court. Although Diaz-Verson may have the right to delay satisfaction of his clear legal obligations by asserting wasteful and non-meritorious motions, this Court has no duty to grant them. The sooner he and his counsel recognize that the day of reckoning is here, the less likely that Diaz-Verson's resources and those of the Court will be further wasted. Diaz-Verson's traverse and motion to dismiss (ECF Nos. 5 & 6) are denied.

IT IS SO ORDERED, this 18th day of February, 2016.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA