IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| HAROLD BLACH, | * | |
|     Plaintiff, | * | |
| ROBERT FREY, | * | |
|     Third Party Claimant, | * | |
| vs. | * | CASE NO. 4:15-MC-5 |
| AFLAC, INC., | * | |
|     Garnishee, | * | |
| SAL DIAZ-VERSON, | * | |
|     Defendant. | * | |

CERTIFIED QUESTION TO THE SUPREME COURT OF GEORGIA

The Georgia garnishment statute was amended during the 2016 session of the General Assembly, apparently in response to a ruling by United States District Judge Marvin Shoob who held the Georgia post-judgment garnishment statute, O.C.G.A. § 18-4-60 *et seq.,* unconstitutional on due process grounds. Judge Shoob found that the statute violated due process because it (1) failed to require notice of exemptions, (2) failed to inform debtors of procedures for claiming an exemption, and (3) failed to provide a prompt procedure for resolving exemption claims. *Strickland v. Alexander* ("*Strickland I*"), 153 F. Supp. 3d 1397, 1416 (N.D. Ga. Sept. 8, 2015). Shortly after entering this

order, Judge Shoob limited his holding "to garnishment actions filed against a financial institution holding a judgment debtor's property under a deposit agreement or account." *Strickland v. Alexander* ("*Strickland II*"), 154 F. Supp. 3d 1347, 1351 (N.D Ga. Oct. 5, 2015) (emphasis omitted). Then, the State of Georgia asked Judge Shoob to alter his previous rulings and declare that Georgia law provides timely procedures for debtors to claim exemptions in post-judgment garnishment actions. He refused. *Strickland v. Alexander* ("*Strickland III*"), 162 F. Supp. 3d 1302, 1303 (N.D. Ga. Nov. 10, 2015).

At the next session of the General Assembly, the Georgia legislature enacted the new garnishment statute "to modernize, reorganize, and provide constitutional protections in garnishment proceedings," and "to provide for procedures only applicable to financial institutions." Act of April 12, 2016, 2016 Ga. Laws 8, 8 (codified at O.C.G.A. § 18-4-1 *et seq.*) Relevant here, the Georgia legislature substantially shortened the garnishment period for garnishments against a "financial institution." The former statute provided for a thirty to forty-five day garnishment period for all garnishments.[1] The new

---

[1] Prior to May 12, 2016, the garnishment period was based on when the garnishee filed an answer. *See* O.C.G.A. § 18-4-20(b)(2015) ("All debts owed by the garnishee to the defendant at the time of the service of the summons of garnishment upon the garnishee and all debts accruing from the garnishee to the defendant from the date of service to the date of the garnishee's answer shall be subject to the process of garnishment . . . ."). The garnishee was required to file an

2

statute provides that garnishments against "financial institutions" shall only last for a five day garnishment period. O.C.G.A. § 18-4-4(c)(2). All other regular garnishments against nonfinancial institutions have a twenty-nine day garnishment period. O.C.G.A. § 18-4-4(c)(4). The new statute provides separate forms for summonses of garnishment against "financial institutions," *see* O.C.G.A. § 18-4-76, and "nonfinancial institutions," *see* O.C.G.A. § 18-4-74, listing the respective garnishment periods. The statute became effective May 12, 2016.

The shortened financial institution garnishment period addresses the issue raised by Judge Shoob's ruling; it limits the garnishment period for an account holder's deposit account at a financial institution. Thus, the account holder does not have to wait thirty to forty-five days to raise an exemption. But the statute arguably does more than shorten the garnishment period for financial institution account holders. Although Judge Shoob's final order did not apply to the garnishment of employee wages and earnings, one interpretation of the amended statute is that the shortened garnishment period applies to any garnishment action against a financial institution regardless of whether the garnishment action is filed to recover from a financial

---

answer "not sooner than 30 days and not later than forty-five days after the service of the summons." O.C.G.A. § 18-4-61(a)(2015).

institution's account holder or a financial institution's employee.

The issue of whether the amendments to the Georgia garnishment statute apply to earnings that a financial institution owes to an employee or retiree is presented by motions to dismiss several garnishments pending in this Court. Those motions maintain that an insurance company is a financial institution under the new garnishment statute and that the shortened garnishment period applies to the garnishment of earnings that a financial institution/insurance company owes to its employees and retirees, thus prohibiting the garnishment of such funds for a period beyond five days. Under this interpretation of the statute, a judgment creditor who seeks to garnish the earnings of the employee of a financial institution, including an insurance company, would be required to file a garnishment action against the employer every five days.

The Georgia courts have not had an opportunity to interpret these provisions of the new Georgia garnishment statute. Thus, there is no clear controlling precedent from the Supreme Court of Georgia on this determinative issue. Because the resolution of these pending motions to dismiss involves an issue of first impression under Georgia law, the Court certifies the following issue to the Supreme Court of Georgia pursuant to O.C.G.A. § 15-2-9:

> Whether an insurance company is a "financial institution" under the Georgia garnishment statute when the insurance company is garnished based on earnings that it owes the defendant as the defendant's former employer.

BACKGROUND

Plaintiff Harold Blach filed this garnishment action against Garnishee AFLAC to collect a $158,343.40 judgment that Blach obtained against Defendant Sal Diaz-Verson and registered in this Court. AFLAC is Diaz-Verson's former employer. Based on this former employment, AFLAC makes bi-monthly payments to Diaz-Verson. The Court has held that twenty-five percent of these payments is subject to garnishment. *See AFLAC, Inc. v. Diaz-Verson*, No. 4:11-CV-81 (CDL), 2012 WL 1903904, *7 (M.D. Ga. May 25, 2012). Since December 2015, Blach has regularly filed summonses of garnishment against AFLAC, and AFLAC has deposited over $140,000.00 into the Court's registry pursuant to the garnishments.[2]

Following May 12, 2016, the effective date of the new Georgia garnishment statute, separate forms were available for garnishments that involved financial institutions and garnishments that involved nonfinancial institutions. The non-financial institution forms provided for a twenty-nine day garnishment period while the financial institution forms

---
[2] The Court previously consolidated all of Blach's recurring garnishments in this action under case number 4-15-MC-5. *See* Order Deny. Mot. to Dismiss and Consolidating Cases, ECF No. 46; Order Consolidating Cases, ECF No. 69.

5

provided for the shortened five day period.  After the effective date for the new statute, Blach used the "nonfinancial institution" garnishment form.  AFLAC followed the instructions on the form and garnished payments to Diaz-Verson for twenty-nine, not five, days after receiving each summons of garnishment.

Diaz-Verson filed supplemental motions to dismiss all garnishments filed after May 12, 2016 (ECF Nos. 127, 128, 161, & 165).  Diaz-Verson argues that after this date Blach used the wrong form for his summonses of garnishment against AFLAC, and AFLAC garnished payments that it owes Diaz-Verson for a period that extended beyond the five day garnishment period authorized under the amendments to the statute.  If Diaz-Verson is correct, a portion of the funds in the Court's registry must be released to Diaz-Verson.  *See* O.C.G.A. § 18-4-7(d) ("When a plaintiff uses the incorrect form for a summons of garnishment of any type, the garnishment shall not be valid . . . .").

If Diaz-Verson is not entitled to the funds, Third Party Claimant Robert Frey claims that he holds a judgment against Diaz-Verson that is superior to Blach's judgment.  He therefore maintains that he is entitled to the garnished funds in the Court's registry.  But before the Court decides Blach's and Frey's dueling motions for disbursement of the funds (ECF Nos. 34, 37, 75, 76, 77, 78, 82, 103, 120, 134, 135, 136, & 154), the

6

Court must determine whether all garnishments filed after May 12, 2016 must be dismissed and the funds returned to Diaz-Verson.[3] This determination turns on an issue of first impression under Georgia law.

DISCUSSION

Diaz-Verson argues that all of Blach's garnishments filed after May 12, 2016 must be dismissed and the funds returned to him because Blach should have used the "financial institution" garnishment form, providing only a five day garnishment period. Diaz-Verson's argument depends on whether AFLAC is a "financial institution" under the Georgia statute.

The statute defines "financial institution" as:

> [E]very federal or state chartered commercial or savings bank, including savings and loan associations and cooperative banks, federal or state chartered credit unions, benefit associations, *insurance companies*, safe-deposit companies, trust companies, any money market mutual fund, or other organization held out to the public as a place of deposit of funds or medium of savings or collective investment.

O.C.G.A. § 18-4-1(4) (emphasis added). AFLAC is an insurance company. And the statute clearly states that insurance companies are financial institutions for purposes of the statute. Thus applying the fundamental principle of statutory

---

[3] The Georgia garnishment statute allows the defendant to file a claim challenging the garnishment "at any time before a judgment is entered or before money or other property subject to garnishment is distributed." O.C.G.A. § 18-4-15(a). Thus, the Court rejects any argument that Diaz-Verson's supplemental motions to dismiss are not properly before the Court.

7

construction that the legislature is deemed to have meant what it said in the statute when that language is clear and unambiguous, this Court would be inclined to hold that an insurance company is a financial institution for purposes of the Georgia garnishment statute and that the garnishment period for any garnishment action against it is five days and not twenty-nine.

Notwithstanding the Court's inclination, it finds it prudent and consistent with comity principles to give the Georgia Supreme Court the opportunity to determine what this Georgia statute actually means, particularly given that an argument can be made that this Court's plain meaning interpretation cannot be what the General Assembly intended. AFLAC is not being garnished based on an insurance policy that Diaz-Verson maintains with AFLAC or based on property it holds under some type of deposit agreement. Rather, AFLAC is garnished based on "earnings" that it owes Diaz-Verson as his former employer. *See* O.C.G.A. § 18-4-1(2) (defining "earnings" to "includ[e] recurring periodic payments from pensions or retirement plans"). If AFLAC is indeed a financial institution for garnishment purposes regardless of the capacity in which it holds a person's property, then any garnishments against AFLAC or any other insurance company (or any other financial

institution) relating to wages owed to employees are limited by this five day garnishment period.

The Court observes that nothing in the text of O.C.G.A. § 18-4-1(4) limits the circumstances under which the listed entities constitute "financial institutions." Thus, in isolation, the plain text of O.C.G.A. § 18-4-1(4) dictates that AFLAC is a financial institution regardless of whether it is garnished based on an insurance policy that the defendant holds with AFLAC or earnings that AFLAC owes the defendant as a current or former employer. And the Court cannot write a limitation into the statutory definition where one does not exist. *See T-Mobile S., LLC, v. City of Milton*, 728 F.3d 1274, 1284 (11th Cir. 2013) ("Our duty is to say what statutory language means, not what it should mean, and not what it would mean if we had drafted it.").

Depending on how far the Georgia Supreme Court finds it appropriate to drift from the text of the statute, evidence of legislative intent can be found to support a non-frivolous alternative interpretation of the statute. One could argue that the last catchall phrase in the definition of financial institution places a limitation on the specific types of financial institutions that precede it. That final phrase defines financial institution to include any "other organization held out to the public as a place of deposit of funds or medium

9

of savings or collective investment." Thus, perhaps the legislature intended for the garnishment amendments to apply only to a certain class of financial institutions—those which hold deposits for their customers. But that phrase is separated by the disjunctive "or," generally suggesting that it may be intended to stand alone, in which case it would be in addition to the preceding types of financial institutions and not a functional limitation on them. Moreover, the definition does not limit the nature of the garnishment action to which the amendments apply. If the garnishee is a "financial institution," nothing in the amendments expressly distinguishes between garnishments directed at financial institution account holders and financial institution employees. Thus, even if one concluded that a financial institution is restricted to an organization that accepts deposits for its account holders, that does not necessarily mean that the changes to the garnishment statute do not apply to garnishment of its employees' earnings.

Should one wish to travel even farther from the definitional text and look at the statute as a whole, some evidence can be found that the legislature perhaps intended for the amendments only to apply to the garnishment of customer deposit accounts. *Cf. K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory

language at issue, as well as the language and design of the statute as a whole."). Most notably, O.C.G.A. § 18-4-7 instructs that:

> A summons of garnishment on a financial institution, or an attachment thereto, shall state with particularity the defendant's account, identification, or tracking numbers known to the plaintiff used by the garnishee in the identification or administration of the defendant's funds or property . . . .

O.C.G.A. § 18-4-7(b)(2). If the plaintiff does not provide the financial institution with this information, the entity may be relieved from liability for a failure to respond to the garnishment. *See* O.C.G.A. § 18-4-23(a).

Requiring the plaintiff to provide a financial institution with an account number for the defendant's funds or property suggests that a "financial institution" is an entity garnished based on funds or property that it holds for the defendant in some type of account. In the present case, AFLAC is not being garnished because it holds Diaz-Verson's "funds or property" in a deposit account. Instead, it owes Diaz-Verson retirement earnings that it is obligated to pay on a regular schedule. Thus, requiring Blach to provide the "account, identification, or tracking number[]" used to identify such "funds or property" could be deemed irrelevant. But the Court must concede that a requirement by the legislature regarding the identification of regular earnings payments by an account number would not

11

necessarily rise to the level of being absurd. *Cf. Johnson v. State*, 475 S.E.2d 595, 596 (Ga. 1996) ("[T]he literal meaning of the statute prevails unless such a construction would produce unreasonable or absurd consequences not contemplated by the legislature."). Most financial institutions likely have payroll "accounts" for their employees just as they have deposit "accounts" for their customers.

It is difficult, however, to reconcile the application of the shortened garnishment period for financial institutions with those provisions in the statute regarding continuing garnishments and continuing garnishments for support. Under the statute, "a summons of garnishment on a financial institution shall not be used for a continuing garnishment or continuing garnishment for support." O.C.G.A. § 18-4-7(c). Thus, if the entities listed in O.C.G.A. § 18-4-1(4) constitute financial institutions under all circumstances, a plaintiff arguably could not bring a continuing garnishment against the wages of a defendant employed by a bank, insurance company, or any other entity listed in O.C.G.A. § 18-4-1(4). Diaz-Verson's interpretation of the amendments requires one to reach the difficult to understand conclusion that the Georgia legislature meant to exempt all such employees from continuing garnishments when it drafted the statute. Such a conclusion also seems contrary to other continuing garnishment provisions that allow

12

for a continuing garnishment or a continuing garnishment for support "against *any garnishee* who is an employer of the defendant." *See* O.C.G.A. §§ 18-4-40; 18-4-51 (emphasis added). But the legislature is authorized to do things that are hard to understand. The Court knows of no reason why it could not exempt financial institutions from continuing wage garnishments if it chose to do so. The question is *what* did it do, not the wisdom of doing it.

Diaz-Verson notes that AFLAC is his former employer, and thus, the Court does not have to resolve whether an insurance company is a "financial institution" when it is garnished based on wages that it owes a *current* employee. But the Court does have to decide whether an insurance company is a "financial institution" when it is garnished based on the regular earnings paid to a former employee who has a contractual right to receive those payments as a retiree. The Court does not comprehend how the distinction between earnings owed to a retired employee compared to those owed to a current employee makes any difference in the interpretation of the statute.

Judge Shoob intended to treat the constitutional infirmities of the former Georgia garnishment statute associated with "garnishment actions filed against a financial institution *holding a judgment debtor's property under a deposit agreement or account.*" *Strickland II*, 154 F. Supp. 3d at 1351 (emphasis

13

partially omitted). The Georgia General Assembly, although obviously motivated by his ruling, arguably found a cure that was more expansive than the disease Judge Shoob had diagnosed. By placing no explicit restriction in the actual language of O.C.G.A. § 18-4-1(4), the legislature did not clearly limit the application of the shortened garnishment period to garnishment actions filed against financial institutions holding a judgment debtor's property under a deposit agreement. The question is whether the Supreme Court of Georgia, using interpretative canons recognized under Georgia law, nevertheless is able to find such a limitation notwithstanding its opaqueness to the undersigned.

CONCLUSION

The newly enacted Georgia garnishment statute substantially shortens the garnishment period for garnishment actions filed against financial institutions. Whether the shortened period applies to all garnishment actions against financial institutions or only those relating to property held by the financial institution pursuant to a deposit or account agreement is an issue of first impression. The resolution of that issue has significant implications for financial institutions, employees of financial institutions, and garnishment creditors of employees of financial institutions. Moreover, its resolution is determinative of the motions to dismiss pending in

14

this present action. Prudence and comity concerns lead this Court to seek guidance from the Georgia Supreme Court. Accordingly, the Court certifies the following question to the Supreme Court of Georgia:

> Whether an insurance company is a "financial institution" under the Georgia garnishment statute when the insurance company is garnished based on earnings that it owes the defendant as the defendant's former employer.

The Court does not intend for the phrasing of this question to limit the Supreme Court of Georgia in its consideration of the issues in this case.

The Clerk of the Middle District of Georgia is directed to transmit this Order, which includes the certified question, to the Supreme Court of Georgia pursuant to Rule 47 of the Rules of the Supreme Court of Georgia.

IT IS SO ORDERED, this 18th day of April, 2017.

S/Clay D. Land<br>
CLAY D. LAND<br>
CHIEF U.S. DISTRICT COURT JUDGE<br>
MIDDLE DISTRICT OF GEORGIA