IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| HAROLD BLACH, | * |
|     Plaintiff, | * |
| ROBERT FREY, | * |
|     Third Party Claimant, | * |
| vs. | *     CASE NO. 4:15-MC-5 |
| AFLAC, INC., | * |
|     Garnishee, | * |
| SAL DIAZ-VERSON, | * |
|     Defendant. | * |

O R D E R

Plaintiff Harold Blach holds a $158,343.40 Alabama judgment against Defendant Sal Diaz-Verson. Garnishee AFLAC is Diaz-Verson's former employer. AFLAC makes bimonthly payments to Diaz-Verson, twenty-five percent of which is subject to garnishment. On October 6, 2015, Blach registered his judgment in this Court and began filing garnishment actions against AFLAC to collect on the judgment. AFLAC has deposited over $150,000.00 into the Court's registry pursuant to the garnishments. Third Party Claimant Robert Frey claims that he holds a $219,982.78 judgment against Diaz-Verson that is superior to Blach's judgment. Blach and Frey filed dueling

motions for disbursement of the garnished funds (ECF Nos. 34, 37, 75, 76, 77, 78, 82, 103, 120, 134, 135, 136, 154, & 175).[1] At the hearing on those motions, Diaz-Verson claimed that he is entitled to have all funds garnished pursuant to garnishments filed after May 12, 2016 returned to him because Blach failed to meet the requirements in the new Georgia garnishment statute for garnishments against a "financial institution." *See* O.C.G.A. § 18-4-4. The Court certified that question to the Supreme Court of Georgia pursuant to O.C.G.A. § 15-2-9 (ECF No. 174). The Court cannot grant Blach's or Frey's motions for disbursement as to garnishments filed after May 12, 2016 until the Georgia Supreme Court responds to the certified question.

The pendency of this certified question, however, does not affect the disbursement of funds garnished pursuant to garnishments filed before May 12, 2016. And the Court has previously rejected Diaz-Verson's objections to garnishments filed before May 12, 2016.[2] Thus, the issue of whether Frey or Blach is entitled to disbursement of the funds deposited into the registry of the Court pursuant to pre-May 12, 2016 garnishments is ripe for decision. Consequently, the Court

---

[1] Frey titled ECF Nos. 103 & 175 as motions for summary judgment, but he seeks summary judgment as to whether he is entitled to disbursement of the funds.
[2] The Court denies Diaz-Verson's motions to dismiss that raise the same arguments that the Court has already rejected (ECF Nos. 65, 66, 114, 115, & 116). Diaz-Verson has preserved his right to appeal the denial of these motions.

grants Frey's motion asking the Court to make that determination now (ECF No. 177).

The Court understands how the arrangement between Diaz-Verson and his former counsel, Frey, regarding the use of a partially satisfied judgment to secure a debt for attorney's fees could raise suspicion. But legal decisions cannot be based on suspicion. Based on the present record, the Court finds that Frey holds a legitimate, unsatisfied judgment against Diaz-Verson that is superior to Blach's judgment. Frey is therefore entitled to disbursement of the funds garnished pursuant to garnishments filed before May 12, 2016, and his motions are granted as to those funds. Frey's motions for disbursement remain pending as to garnishments filed after May 12, 2016 (ECF Nos. 37, 75, 76, 77, 78, 82, 134, 135, 136, 142, 154, & 175). As of the January 18, 2017 hearing in this case, the unpaid balance of Frey's judgment plus interest was $299,354.69. Frey Aff. at 2 (Jan. 2, 2017), ECF No. 133.

The funds in the Court's registry do not satisfy the full amount of Frey's judgment, and Blach cannot collect on his judgment until Frey's judgment is satisfied. Thus, regardless of the pendency of the certified question to the Supreme Court of Georgia, Blach is not entitled to any of the funds in the Court's registry at this time. Accordingly, the Court denies

Blach's motions for disbursement in full (ECF Nos. 34, 120, & 138).

Finally, the Court denies Diaz-Verson's motion to stay all garnishments until the Supreme Court of Georgia responds to the certified question (ECF No. 178). The Court may consider whether disbursement pursuant to today's Order should be stayed if any party files a notice of appeal challenging today's ruling.

FACTUAL BACKGROUND

The following facts are relevant to whether Frey holds a legitimate judgment against Diaz-Verson.

Frey is Diaz-Verson's former attorney. He represented Diaz-Verson in various matters between 2009 and 2014, including Diaz-Verson's disputes with non-party Porter Bridge Loan Company ("Porter Bridge"). In 2009, Porter Bridge obtained a $397,386.87 Florida judgment against Diaz-Verson. Frey's Third Party Claim ¶ 1, ECF No. 32. Porter Bridge domesticated the judgment in Georgia on June 23, 2010, *id.*, and filed several state court garnishment actions against the same bimonthly AFLAC payments at issue in this case. Frey represented Diaz-Verson in the domestication and garnishment actions. Frey also unsuccessfully defended Diaz-Verson in a declaratory judgment/interpleader action in this Court. In that case, this Court held that twenty-five percent of each AFLAC payment is

4

subject to garnishment. *AFLAC v. Diaz-Verson*, No. 4-11-CV-81 (CDL), 2012 WL 1903904, at *6-*7 (M.D. Ga. May 25, 2012).

Diaz-Verson hired additional counsel and appealed. While the appeal was pending, Diaz-Verson and Porter Bridge mediated and settled the case in a Confidential Settlement Agreement. The Agreement provided that Diaz-Verson would pay Porter Bridge $275,000.00 and dismiss his appeal. Confidential Settlement Agreement ¶ 4, ECF No. 59 ("Agreement"). It also provided that Porter Bridge would:

> [F]orever discharge Diaz-Verson . . . of and from all manner of actions, causes of action, suits at law or equity, asserted or unasserted claims, future claims which may hereafter arise, judgments, costs, demands, damages, debts, attorneys' fees, liens, losses, injuries, or any liabilities or obligations whatsoever . . . that Porter Bridge ever had, are now existing or that Porter Bridge may hereafter have against Diaz-Verson . . . that arise, grow out of, relate to or are in any way whatsoever incident to or connected with the Florida Action, [and] the Florida Judgment . . . .

*Id.* ¶ 1. Porter Bridge also promised that:

> Within five (5) business days of the receipt of the Settlement Amount, Porter Bridge shall transfer and assign Robert J. Frey, Esq. the Florida Judgment . . . .

*Id.* ¶ 5.

Diaz-Verson paid Porter Bridge $275,000.00, and Porter Bridge assigned the Florida judgment to Frey. Def.'s Mot. to Dismiss Ex. 16, Assignment of J., ECF No. 5-17. On February 11, 2013, Frey recorded the assignment. *Id.* At the time of the

5

settlement, Diaz-Verson owed Frey $361,433.93 in legal fees. Frey's Reply Ex. 1, Billing Records, ECF No. 35-1. The judgment was meant to secure Frey's right to collect $219,982.78 of the unpaid legal fees—the balance of the judgment after Diaz-Verson paid $275,000.00 to Porter Bridge.[3]  Pl.'s Renewed Mot. for Disbursement Ex. 1, Frey Aff. at 2 (Feb. 19, 2016), ECF No. 34-2. This left $141,451.15 of Frey's unpaid legal fees unsecured. Additionally, after the assignment, Diaz-Verson incurred another $20,569.00 in unsecured debt to Frey. *Id.*

Frey has never sued Diaz-Verson to recover the unsecured legal fees. Nor did Frey seek to garnish Diaz-Verson's payments to satisfy the Florida judgment until Blach filed a garnishment action against AFLAC. Prior to Blach's garnishments, Frey allowed Diaz-Verson to make "unstructured," voluntary payments "from time to time" to pay off his debt. Frey Aff. at 2 (Feb. 19, 2016). Frey applied the voluntary payments against the balance of unsecured legal fees before applying any payments against the Florida judgment. The payments have not satisfied the amount of unsecured legal fees, and therefore, the balance of the Florida judgment remains unsatisfied.

When Blach began filing garnishment actions against AFLAC, Diaz-Verson's disposable earnings decreased, and he became

---

[3] Including interest, Diaz-Verson owed Porter Bridge $494,982.78 on the Florida judgment at the time of the settlement. Frey's Reply Ex. 2, Porter Judgment Amount, ECF No. 35-2.

6

unable to make voluntary payments to Frey. *Id*. In order to protect his right to collect his judgment, Frey intervened in this action, claiming that his judgment against Diaz-Verson is superior to Blach's judgment, and therefore, he is entitled to have his judgment satisfied first.

## DISCUSSION

**I. Blach's and Frey's Motions for Disbursement**

Frey's judgment was domesticated in Georgia before Blach's judgment. *See* Def.'s Mot. to Dismiss Ex. 15, Order to Domesticate Foreign J., ECF No. 5-16; Def.'s Mot. to Dismiss Ex. 16, Assignment of J., ECF No. 5-17; Frey's Reply to Pl.'s Resp. to Third Party Claim 2, ECF No. 35. Thus, if Frey holds a legitimate, unsatisfied judgment, he is entitled to disbursement of the funds garnished pursuant to garnishments filed before May 12, 2016. *See* O.C.G.A. § 18-4-18 (providing that the oldest judgment has priority); *NationsBank, N.A. v. Gibbons*, 487 S.E.2d 417, 419 (Ga. Ct. App. 1997) (holding that the relevant date for priority of foreign judgments is the date that the judgment is domesticated in Georgia). Blach claims that Frey does not hold a legitimate, unsatisfied judgment because: (1) the Agreement between Diaz-Verson and Porter Bridge satisfied the judgment by releasing Diaz-Verson from all liability on it; and (2) even if Porter Bridge assigned an unsatisfied judgment to Frey, the

7

assignment is void under the Georgia Uniform Voidable Transactions Act (GUVTA).[4]

A.   The Confidential Settlement Agreement

Blach first argues that the Agreement released Diaz-Verson from all liability on the Florida judgment, essentially "satisfying" the judgment before Porter Bridge assigned it to Frey. The construction of a contract in Georgia is first a question of law for the Court. O.C.G.A. § 13-2-1. Under Georgia law:

> The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (O.C.G.A. § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity.

*Georgia-Pac. Corp. v. Lieberam*, 959 F.2d 901, 904 (11th Cir. 1992) (quoting *Copy Sys. of Savannah, Inc. v. Page*, 398 S.E.2d 784, 785 (Ga. Ct. App. 1990)). A contract is ambiguous "if the terms are duplicitous, uncertain, unclear, indistinct, difficult to comprehend, or open to various interpretations." *Vinnett v. Gen. Elec. Co.*, 271 F. App'x 908, 912 (11th Cir. 2008) (per curiam) (citing *Early v. Kent*, 108 S.E.2d 708, 709 (Ga. 1959)).

The Agreement arguably is ambiguous. Paragraph one states that Porter Bridge and its assigns:

---

[4] Blach also contends that Frey is not entitled to collect his judgment because he is acting on Diaz-Verson's behalf by allowing Diaz-Verson to pay off the debt voluntarily. But Blach cites no authority to support his contention that a benevolent creditor forfeits his right to collect. Thus, the Court finds this argument unpersuasive.

8

> [F]orever discharge Diaz-Verson . . . of and from all . . . judgments . . . that Porter Bridge ever had, are now existing or that Porter Bridge may hereafter have against Diaz-Verson . . . that arise, grow out of, relate to or are in any way whatsoever incident to or connected with the Florida Action, [and] the Florida Judgment . . . .

Agreement ¶ 1. The Florida judgment clearly arose from, grew out of, and related to the Florida action. Thus, read in isolation this provision appears to release Diaz-Verson from all liability to Porter Bridge and its assigns on the Florida judgment. But "the whole contract should be looked to in arriving at the construction of any part." O.C.G.A. § 13-2-2(4). The Court must therefore interpret paragraph one in conjunction with paragraph five, which provides that:

> Within five (5) business days of the receipt of the Settlement Amount, Porter Bridge shall transfer and assign Robert J. Frey, Esq. the Florida Judgment . . . .

Agreement ¶ 5. If the parties intended for paragraph one to release Diaz-Verson from all liability on the Florida judgment without exception, then the purported assignment of the Florida judgment to Frey in paragraph five makes little sense.

The Court must use Georgia's rules of contract construction to resolve the dissonance between paragraph one and paragraph five. Under Georgia law, "[t]he construction which will uphold a contract in whole and in every part is to be preferred." O.C.G.A. § 13-2-2(4). And generally, "[w]hen two contract terms

9

conflict, the specific term controls over the general one." *United States v. Pielago*, 135 F.3d 703, 710 (11th Cir. 1998); *accord RLI Ins. v. Highlands on Ponce, LLC*, 635 S.E.2d 168, 172 (Ga. Ct. App. 2006). In order to give meaning to all paragraphs in the contract, the Court finds that the parties intended for paragraph one to generally release Diaz-Verson from all liability on the Florida judgment subject to the specific exception in paragraph five—that Porter Bridge would assign the balance of the Florida judgment to Frey. Based on this interpretation, the Court finds that Porter Bridge assigned the unsatisfied balance of the Florida judgment to Frey.[5]

B. Georgia Uniform Voidable Transfers Act

Blach next argues that the assignment is voidable as a fraudulent transaction under GUVTA. The Act provides:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> With actual intent to hinder, delay, or defraud any creditor of the debtor; . . . .

---

[5] Because Georgia's rules of contract construction resolve the ambiguity in paragraph one, the Court need not look to extrinsic evidence to interpret the provision. *See Livoti v. Aycock*, 590 S.E.2d 159, 164 (Ga. Ct. App. 2003) ("[N]ormally, only if the ambiguity is not resolved by application of the rules of construction may parol evidence be introduced to explain the agreement, . . . ."). The Court notes, however, that Frey and Diaz-Verson submitted extrinsic evidence consistent with the Court's interpretation.

10

O.C.G.A. § 18-2-74(a). To determine whether Diaz-Verson agreed to the assignment with actual intent to "hinder, delay, or defraud" his other creditors, the Court may consider several factors, including whether:

> (1) The transfer or obligation was to an insider;
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> . . . .
>
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; [and]
>
> . . . .
>
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; . . . .

Ga. Code Ann. § 18-2-74 (b).

Blach claims that the assignment is voidable under several of the statutory factors. But Blach does not appear to dispute that Diaz-Verson owed Frey over $300,000.00 in unpaid legal fees. If the assignment was meant to cover a legitimate debt that Frey intends to collect, it is difficult to see how the assignment is fraudulent.

11

Blach's analysis of the factors is unpersuasive. Specifically, Blach claims that the following facts indicate fraud under the factors: (1) Frey was Diaz-Verson's attorney; (2) Frey failed to file garnishments to promptly collect his judgment; (3) the Agreement between Diaz-Verson and Porter Bridge was confidential; (4) Frey did not offer any consideration for assignment of the judgment; and (5) Porter Bridge assigned the judgment shortly after Blach obtained his judgment and Diaz-Verson learned that his bimonthly AFLAC payments are subject to garnishment.

Although Frey was Diaz-Verson's attorney, he was not an "insider" as defined by the statute. *See* O.C.G.A. § 18-2-71(8) (dictating that "insider" includes the debtor's relatives, general partners and general partners' relatives, general partnerships, and corporations of which the debtor is in control). And while the terms of the Agreement were confidential, the assignment itself was publicly filed. Additionally, the assignment benefitted Diaz-Verson by securing part of the unsecured debt that Diaz-Verson owed Frey, essentially "satisfying" part of the unsecured debt with secured judgment debt.

Moreover, Diaz-Verson does not appear to have unlimited control over the assets that he owes Frey. Frey concedes that if Blach stops filing garnishments, Frey will allow Diaz-Verson

to make voluntary, unstructured payments to pay off his debt. And Diaz-Verson may have some control over the timing and amount of the voluntary payments. But this control is limited. When Diaz-Verson stopped making voluntary payments, Frey intervened in this garnishment to assert his right to collect. Thus, the record does not support the conclusion that Frey intends to never collect his judgment.

Finally, Blach points to Porter Bridge's assignment of the judgment to Frey shortly after Blach and several other creditors obtained judgments against Diaz-Verson and Diaz-Verson learned that his AFLAC payments were subject to garnishment. But the timing of the assignment alone is insufficient to prove Diaz-Verson's actual intent to hinder, delay, or defraud his other creditors. Blach has failed to point to evidence from which a reasonable juror could conclude that the assignment is voidable under GUVTA.

**II. Diaz-Verson's Motion to Stay**

Diaz-Verson moves to stay all garnishments pending the Supreme Court of Georgia's answer to this Court's certified question because: (1) the funds in the Court's registry exceed the amount of Blach's judgment; and (2) Blach continues to use the "nonfinancial institution" garnishment form. Diaz-Verson's first argument fails in light of the Court's determination that Frey's judgment is superior to Blach's judgment. Given that

13

finding, Blach may continue filing garnishments until his judgment and Frey's judgment are satisfied.

The Court also finds that a stay based on Blach's use of the "nonfinancial institution" garnishment form is inappropriate under the circumstances. If the Georgia Supreme Court determines that Blach used the wrong form for his garnishments, the funds in question may have to be returned to Diaz-Verson, and Blach may have to re-garnish funds with the appropriate form. But Diaz-Verson's potential success on his "financial institution" argument does not change the fact that he owes hundreds of thousands of dollars to Frey and Blach. Given this undisputed fact, it is appropriate to allow Blach to decide whether to risk garnishing funds that may eventually be returned to Diaz-Verson.

CONCLUSION

For the reasons stated above, the Court denies Blach's motions for disbursement in full (ECF Nos. 34, 120, & 138) at this time. The Court grants Frey's motions for disbursement as to all garnishments filed before May 12, 2016. Before May 12, 2016, Blach filed applications for writs of garnishment against AFLAC on December 18, 2015 (ECF No. 1 in 4:15-MC-5), February 22, 2016 (ECF No. 1 in 4:16-MC-1), and April 19, 2016 (ECF No. 1 in 4:16-MC-2). The Clerk issued summonses of garnishment on December 23, 2015, March 14, 2016, and April 20, 2016. Pursuant

to these garnishments, AFLAC deposited $13,380.82, $15,379.62, and $9,675.32 into the Court's registry for a total of $38,435.76.[6]

The Clerk is instructed to enter judgment in favor of Frey with regard to these three garnishments. Fourteen days from the date of today's Order, the Clerk shall disburse $38,435.76 to Frey, unless any party files a notice of appeal relating to today's rulings. If any party seeks a stay pending an appeal of today's rulings, they shall file a motion with citation to applicable authority with the notice of appeal. Frey's motions for disbursement (ECF Nos. 37, 75, 76, 77, 78, 82, 134, 135, 136, 142, 154, & 175) shall remain pending as to funds garnished pursuant to garnishments filed after May 12, 2016. Finally, the Court denies Diaz-Verson's motion to stay the garnishments pending resolution of the Supreme Court of Georgia's answer to the certified question (ECF No. 178).

IT IS SO ORDERED, this 8th day of May, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[6] On July 25, 2016, AFLAC deposited $4837.66 into the Court's registry. *See* 4:16-MC-2. But it is not clear from the entry that this deposit was pursuant to a garnishment filed before May 12, 2016. Thus, the Court will not order disbursement of these funds at this time.