IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| HAROLD BLACH, | * |
| Plaintiff, | * |
| ROBERT FREY, REGENCY REALTY, LLC, and ROBERT FREY, TRUSTEE, | * |
| | * |
| Third Party Claimants, | * |
| vs. | CASE NO. 4:15-MC-5 (CDL) |
| | * |
| AFLAC, INC., | * |
| Garnishee, | * |
| SAL DIAZ-VERSON, | * |
| Defendant. | * |

O R D E R

Third Party Claimant Robert Frey held, pursuant to an assignment from Porter Bridge Loan Company, a judgment against his former client, Defendant Sal-Diaz Verson ("Porter Bridge Judgment"). That judgment secured certain unpaid legal fees that Diaz-Verson owed to Frey. Frey asserts that he assigned the Porter Bridge Judgment to Regency Realty, LLC and that Regency Realty assigned the Porter Bridge Judgment to Frey as trustee for the Robert J. Frey Living Trust.

Plaintiff Harold Blach also holds a judgment against Diaz-Verson. Since 2015, Blach has been attempting to garnish funds owed to Diaz-Verson by his former employer, Garnishee AFLAC,

Inc. AFLAC has been paying funds into the registry of the Court pursuant to Blach's garnishments. Frey intervened in the garnishment action, claiming that the Porter Bridge Judgment he was assigned is superior to Blach's. The Court agreed with Frey and ordered the disbursement of $43,273.42 to Frey in May 2017. *See* J. (May 9, 2017), ECF No. 181; J. (May 15, 2017), ECF No. 185. The Court declined to disburse funds that were deposited into the Court's registry pursuant to garnishment applications made after May 12, 2016 because it was not clear that the garnishment applications were proper under Georgia's new garnishment statute. *See generally Blach v. Diaz-Verson*, No. 4:15-MC-5, 2017 WL 1854675 (M.D. Ga. May 8, 2017). The Georgia Supreme Court answered this Court's certified question on the issue. *See generally Blach v. Diaz-Verson*, No. S17Q1508, 2018 WL 700024 (Ga. Feb. 5, 2018).

Based on the Supreme Court's answer, Blach's garnishment applications were proper, and the funds held in the Court's registry pursuant to the following garnishment applications can now be disbursed:

- ECF No. 1 in 4:16-mc-6 (5/24/2016, $10,462.66)
- ECF No. 1 in 4:16-mc-7 (7/6/2016, $9,675.32)
- ECF No. 47 in 4:15-mc-5 (8/3/2016, $9,675.32)
- ECF No. 61 in 4:15-mc-5 (8/31/2016, $10,462.66)
- ECF No. 79 in 4:15-mc-5 (9/28/2016, $9,675.32)
- ECF No. 99 in 4:15-mc-5 (10/26/2016, $9,675.32)
- ECF No. 110 in 4:15-mc-5 (11/22/2016, $15,300.32)
- ECF No. 121 in 4:15-mc-5 (12/22/2016, $9,392.80)

- ECF No. 139 in 4:15-mc-5 (1/18/2017, $9,125.17)
- ECF No. 150 in 4:15-mc-5 (2/16/2017, $9,403.46)
- ECF No. 167 in 4:15-mc-5 (3/15/2017, $15,587.50)
- ECF No. 171 in 4:15-mc-5 (4/12/2017, $4,945.60)
- ECF No. 182 in 4:15-mc-5 (5/11/2017, $15,516.20)
- ECF No. 195 in 4:15-mc-5 (6/8/2017, $9,891.20)
- ECF No. 201 in 4:15-mc-5 (7/3/2017, $9,891.20)
- ECF No. 204 in 4:15-mc-5 (8/2/2017, $9,891.20)
- ECF No. 210 in 4:15-mc-5 (8/29/2017, $15,516.20)
- ECF No. 238 in 4:15-mc-5 (9/27/2017, $4,945.60)
- ECF No. 250 in 4:15-mc-5 (10/25/2017, $9,891.20)
- ECF No. 255 in 4:15-mc-5 (11/21/2017, $15,516.20)
- ECF No. 269 in 4:15-mc-5 (12/19/2017, $9,601.61)

**I.   To Whom Should the Funds Be Disbursed?**

Frey filed motions for disbursement of $224,042.06 in garnished funds that AFLAC had paid into the registry of the Court as of February 10, 2018. He seeks disbursement of funds to the person or entity that held the Porter Bridge Judgment at the time of the garnishment application. Frey was assigned the judgment on December 5, 2012. Assignment of J. (Dec. 5, 2012), ECF No. 5-17. Frey assigned the judgment to Regency Realty, LLC, a limited liability company of which Frey is the manager, on June 1, 2017. Assignment of J. (June 1, 2017), ECF No. 257-1. Regency Realty, LLC assigned the judgment to Frey as Trustee of the Robert J. Frey Living Trust on November 18, 2017. Assignment of J. (Nov. 18, 2017), ECF No. 309-1. Based on the certified copies of the assignments of judgment, Frey as Trustee currently holds the Porter Bridge Judgment. Thus, Frey seeks

3

disbursement of $138,897.65 to himself individually, $60,026.60 to Regency Realty, and $25,117.81 to Frey as Trustee.

Blach filed his own motion for disbursement, and he opposes any disbursement to Frey, arguing that Frey (and his assigns) should no longer be considered to be the superior judgment holder. Blach previously argued that the assignment of the Porter Bridge Judgment to Frey is voidable under the Georgia Uniform Voidable Transfers Act ("GUVTA"), O.C.G.A. § 18-2-74. The Court rejected that argument. *Blach v. AFLAC, Inc.*, No. 4:15-MC-5, 2017 WL 1854675, at *5 (M.D. Ga. May 8, 2017). Blach asks the Court to reconsider its prior ruling on two grounds. First, Blach now disputes that Diaz-Verson owed Frey legitimate unpaid legal fees of more than $300,000.00. Second, Blach asks the Court to reconsider its prior ruling on the priority of claims in light of new evidence.

A. <u>Are the Legal Fees Frey Seeks to Collect from Diaz-Verson Legitimate?</u>

Frey and Diaz-Verson have both asserted that Diaz-Verson owed Frey more than $360,000.00 in attorney's fees and expenses incurred between 2009 and 2012. When Blach challenged Frey's previous motions for disbursement, he did "not appear to dispute that Diaz-Verson owed Frey over $300,000.00 in unpaid legal fees." *Blach*, 2017 WL 1854675, at *5. The Court observed that "[i]f the assignment was meant to cover a legitimate debt that

4

Frey intends to collect, it is difficult to see how the assignment is fraudulent." *Id.* The Court then considered the statutory GUVTA factors and concluded that Blach "failed to point to evidence from which a reasonable juror could conclude that the assignment is voidable under GUVTA." *Id.*

Blach now contends that some of the fees and expenses incurred by Diaz-Verson for Frey's legal services were not legitimate and that the assignment of the Porter Bridge judgment to Frey should thus be considered fraudulent. Blach contends that the following fees were not legitimate:

<u>Fees for representation in Florida cases.</u> Blach points out that Frey billed Diaz-Verson for work on three matters in Florida: Walbridge Aldinger v. Diaz-Verson *et al.*, Manatee County, FL (279.4 hours, $110,617.00); Mark Riley v. Diaz-Verson *et al.*, Sarasota County, FL (36.6 hours, $14,473.50); and FIA Services v. Diaz-Verson, Sarasota County, FL (9.2 hours, $3,673.00). Legal Fees Due as of October 31, 2012, ECF No. 35-1. Blach contends that these fees are not legitimate because Frey was not licensed to practice law in Florida. Frey admits that he is not licensed to practice law in Florida, but he asserts that he associated local counsel in the Florida cases and was admitted *pro hac vice*. Based on the present record, the Court declines to find that these fees were not legitimate.

5

Double Billing.  According to Blach, Frey billed Diaz-Verson twice for several time entries totaling 3.5 hours ($1,417.50) during July and August of 2012.  Frey admits that he inadvertently double billed 3.5 hours.  This error does not, however, significantly change the amount Diaz-Verson owes to Blach, and it does not impact the amount of the fees that are secured by the Porter Bridge judgment.

Billing for Appeal.  Frey billed Diaz-Verson 11.5 hours, plus travel expenses, to attend court-mandated mediation in the Porter Bridge case even though new counsel had primary responsibility for the appeal.  Frey asserts that although he did not participate in the negotiations, he attended the mediation at the request of Diaz-Verson and his new counsel because of his knowledge of the underlying case.  Even if these fees and expenses were inappropriate, they do not significantly change the amount Diaz-Verson owes to Blach, and they not impact the amount of the fees that are secured by the Porter Bridge judgment.

In summary, the Court concludes that Blach has not pointed to sufficient evidence to establish that Diaz-Verson did not owe Frey legitimate legal fees and expenses in at least the amount of the Porter Bridge Judgment.

### B. Should the Court Reconsider its Prior Ruling Based on Blach's New Evidence?

Blach argues that even if the Porter Bridge Judgment secures a legitimate debt, new evidence establishes fraudulent intent with regard to the assignment of that judgment. Blach points out, as he did when he challenged Frey's prior motions for disbursement, that Frey claims that Diaz-Verson incurred $391,899.00 in attorney's fees and $9,079.93 in expenses before the Porter Bridge Judgment was assigned to Frey; before the assignment, Frey only received $39,545.00 in payments from Diaz-Verson. Blach also asserts, as he did when he challenged Frey's prior motions for disbursement, that Frey did not make any effort to collect on the Porter Bridge Judgment until Blach filed a garnishment action against Diaz-Verson and that Frey has received sporadic voluntary payments from Diaz-Verson but applied them to the balance of unsecured legal fees, not to the Porter Bridge Judgment. The "new facts" Blach relies upon include Frey initiating several state court garnishment actions but dismissing them; Frey appearing to side with Diaz-Verson on the "financial institution form" question at a hearing before this Court; Frey taking no position on the certified question to the Georgia Supreme Court, even though his right to the garnished funds would be settled by the Georgia Supreme Court's answer; Frey filing motions to sanction Blach for making an

7

argument that would have benefitted Frey, to the detriment of Diaz-Verson; and Frey appearing to communicate regularly with Diaz-Verson's current attorneys.

The Court is not persuaded that these "new facts" create a jury question on whether the assignment of the Porter Bridge Judgment is voidable under GUVTA. Blach's new evidence does not change the balance of the GUVTA factors. The present record still suggests that the assignment was meant to cover a legitimate debt that Frey intends to collect. And, on the day it became clear that the garnished funds held in this Court's registry would be disbursed, Frey filed his motions for disbursement to collect on the Porter Bridge Judgment. Accordingly, the Court rejects Blach's request to reconsider its prior ruling on the superiority of Frey's judgment. The motions for disbursement Frey filed on behalf of himself, Regency Realty, LLC, and Frey as Trustee (ECF Nos. 303, 304, 305, 309) are therefore granted to the extent set forth below. Blach's motion for disbursement (ECF No. 316) is denied.

**II. What is the Outstanding Balance of Frey's Judgment?**

Frey contends that the outstanding balance of his judgment was $318,182.12 as of January 30, 2018. This amount includes: (1) principal balance of $219,982.78; (2) accrued simple interest calculated at a rate of 8% per annum on the unpaid principal balance; (3) costs; and (4) attorney's fees. This

amount takes into account the $43,273.42 disbursement Frey received in May 2017; according to Frey, this amount should be applied first to costs and then to interest. Blach contends that Frey's math is wrong. The Court addresses each issue in turn.

A. Principal Amount

The Court previously found that the assignment to Frey of the Porter Bridge Judgment "was meant to secure Frey's right to collect $219,982.78" in unpaid legal fees from Diaz-Verson. *Blach v. AFLAC, Inc.*, No. 4:15-MC-5, 2017 WL 1854675, at *2 (M.D. Ga. May 8, 2017). In reaching this conclusion, the Court accepted Frey's affidavit assertion that Diaz-Verson owed Porter Bridge $494,982.78 on the Florida judgment at the time of the settlement. *Id.* & n.3 (citing Frey Aff. 1-2 (Feb. 19, 2016), ECF No. 34-2; Porter J. Amount as of Nov. 1, 2012, ECF No. 35-2). Diaz-Verson paid Porter Bridge $275,000.00, and Frey seeks to collect the remaining balance of the judgment.

In his first response to Frey's motions for disbursement, Blach argued that the principal balance of the judgment is actually $218,282.31.[1] In his second response, Blach argued that the principal balance of the judgment is $217,933.22. The Court does not recall Blach challenging Frey's assertion regarding the

---

[1] Blach retracted this estimate of the principal judgment amount, but the Court finds it useful to work through all three scenarios presented by the parties.

9

principal balance when the Court decided the previous disbursement issue.

Frey calculated the $219,982.78 principal balance based on his assertion that the original judgment date of the Porter Bridge Judgment was October 5, 2009 and the settlement and release date was November 1, 2012. Frey Aff. 2 (Feb. 19, 2016), ECF No. 34-2 (stating that the original judgment date was October 5, 2009 and that the Porter Bridge settlement was finalized on November 1, 2012); Frey Suppl. Reply 4, ECF No. 318. Using these dates, Frey calculated the principal balance based on an original judgment amount of $397,386.87, accruing 8% annual interest for three years plus a monthly interest rate of .667% accruing on 26 days of a 31-day month. Frey Mot. for Disbursement Ex. D, Balance Chart, ECF No. 309-4. According to Frey, the outstanding balance due to Porter Bridge as of November 1, 2012 was $494,982.78; after Diaz-Verson's payment of $275,000.00 to Porter Bridge, the remaining balance was $219,982.78.

Blach calculated the $218,282.31 principal balance based on an original judgment date of October 30, 2009 and a finalized settlement date of November 5, 2012. Based on these dates, the outstanding balance due to Porter Bridge as of the November 5, 2012 settlement was $493,282.31; after Diaz-Verson's payment of $275,000.00 to Porter Bridge, the remaining balance was

$218,282.31. Although these original judgment and final settlement dates are not the same as the dates that Frey relies on, both dates are supported by an internally inconsistent affidavit Frey previously submitted to the Court. Frey Aff. 1-2 (Feb. 19, 2016), ECF No. 34-2 (stating that the judgment was "dated and ordered on 30 October 2009" and that the settlement and release were finalized on November 5, 2012).

Finally, Blach calculated the $217,933.22 principal balance based on an original judgment date of October 30, 2009 and a finalized settlement date of November 1, 2012. As discussed above, these dates are supported by Frey's internally inconsistent affidavit.

To determine the correct dates, the Court reviewed the Florida Final Judgment and the Confidential Settlement Agreement that Frey relies on to support his claim to the funds. The Florida Final Judgment was signed by the judge and filed on October 30, 2009. *See generally* Frey Suppl. Reply Ex. A, Florida Final Judgment, ECF No. 318-1. And, the Confidential Settlement Agreement states that the judgment was entered "on or about October 30, 2009." Confidential Settlement Agreement & Release 1, ECF No. 59. Therefore, the Court finds that the original judgment date was October 30, 2009. The effective date of the settlement agreement is November 5, 2012. *Id.* at 1 (defining effective date as the date on which the agreement has

been executed by all parties); *id.* at 8 (stating that Porter Bridge's representative executed the agreement on November 5, 2012).[2] The Court concludes that the outstanding principal balance of the Porter Bridge Judgment should be calculated using those dates; the correct principal balance is $218,282.31.

B. <u>Expenses and Attorney's Fees</u>

Frey contends that he has incurred $13,259.99 in expenses and $35,820.00 attorney's fees collecting the judgment.[3] He asserts that is entitled to these expenses and fees as part of the judgment and that any disbursements must be applied toward these expenses and fees before they are applied to interest or principal.

Frey did not point to any legal authority or evidence to establish that the expenses and fees he seeks are recoverable as part of the debt that is secured by the Porter Bridge Judgment that was assigned to him. Frey does point out that under Fla.

---

[2] Blach asserted in a footnote that all payments were made to Porter Bridge by November 1, 2012; presumably, this assertion is the basis for his contention that the finalized settlement date is November 1, 2012. In support of this argument, Blach pointed to evidence that Diaz-Verson tendered a partial payment to Porter Bridge in the amount of $24,004.46 on October 31, 2012. Cashier's Check, ECF No. 91 at 3. But as far as the Court can tell, Blach did not point to any evidence to establish that the settlement was actually finalized before its effective date of November 5, 2012.

[3] The expenses include everything from notary and mailing fees to more than $9,000 in travel expenses. Perhaps recognizing that he would not be able to argue that he is entitled to attorney's fees for seeking to collect the judgment on behalf of himself individually, Frey only seeks attorney's fees for the timeframe after he assigned the judgment to the LLC of which he is the manager and again to himself as Trustee of the Robert J. Frey Living Trust.

12

Stat. § 57.115, a "court may award against a judgment debtor reasonable costs and attorney's fees incurred thereafter by a judgment creditor in connection with execution on a judgment." But that statute only applies to an execution on a judgment and does *not* apply when the judgment creditor proceeds under a garnishment statute. *Paz v. Hernandez*, 654 So. 2d 1243, 1244 (Fla. Dist. Ct. App. 1995). "It is well-settled law that attorneys' fees may be awarded by a court only when authorized by statute or by agreement of the parties." *Id.* Frey pointed to nothing in the Settlement Agreement he relies on as the foundation of his claim to the funds to establish that Diaz-Verson contractually agreed to pay the costs of collection as part of the debt he owes to Frey. And Frey pointed to no law suggesting that the costs of collection he seeks can be recovered as part of the debt. Therefore, Frey may not recover these costs as part of the debt.

Even if costs and expenses associated with collecting the judgment *were* recoverable, a significant portion of Frey's activities had little or nothing to do with actually collecting his judgment from Diaz-Verson. Frey has not filed one application for a summons of garnishment in this Court on behalf of himself or his "clients." When Diaz-Verson tried to convince this Court and the Georgia Supreme Court that all of the funds garnished after May 12, 2016 should be returned to him and not

13

disbursed to Frey or Blach, Frey did not oppose him. Frey did, however, file several dubious motions for sanctions against Blach—motions that could not possibly be construed as part of an effort to collect his judgment against Diaz-Verson. For all of these reasons, the Court finds that Frey may not recover expenses and attorney's fees as part of the debt Diaz-Verson owes to him. Accordingly, the Court rejects Frey's argument that any disbursement—past or future—should be applied to expenses and fees before interest and principal.

### C. Accrued Interest

It is undisputed that any disbursements Frey receives must be applied to accrued interest before they can be applied to reduce the principal. *See* O.C.G.A. § 7-4-17 (stating that payments on any debt "shall be applied first to the discharge of any interest due at the time, and the balance, if any, shall be applied to the reduction of the principal"). Frey has received one disbursement from this Court in the amount of $43,273.42 and one disbursement from the State Court of Gwinnett County in the amount of $12,821.83. These disbursements were not enough to satisfy the total amount of accrued interest, but they did reduce it. As of today, March 14, 2018, the accrued interest totals $37,592.71, and interest accrues at a rate of $47.84 per day.

14

CONCLUSION

As discussed above, the Court denies Blach's motion for disbursement (ECF No. 316) and grants Frey's motions for disbursement (ECF Nos. 303, 304, 305, & 309) as follows:

- In favor of Frey with regard to the thirteen garnishments totaling $138,897.65 based on the garnishment applications dated between May 24, 2016 and May 11, 2017 (ECF Nos. 1 in 4:16-mc-6; 1 in 4:16-mc-7; 47 in 4:15-mc-5; 61 in 4:15-mc-5; 79 in 4:15-mc-5; 99 in 4:15-mc-5; 110 in 4:15-mc-5; 121 in 4:15-mc-5; 139 in 4:15-mc-5; 150 in 4:15-mc-5; 167 in 4:15-mc-5; 171 in 4:15-mc-5; 182 in 4:15-mc-5).

- In favor of Regency Realty, LLC with regard to the six garnishments totaling $60,026.60 based on the garnishment applications dated between June 8, 2017 and October 25, 2017 (195 in 4:15-mc-5; 201 in 4:15-mc-5; 204 in 4:15-mc-5; 210 in 4:15-mc-5; 238 in 4:15-mc-5; 250 in 4:15-mc-5).

- In favor of Frey as Trustee for the Robert J. Frey living trust with regard to the two garnishments totaling $25,117.81 based on the garnishment applications dated between November 21, 2017 and December 19, 2017 (255 in 4:15-mc-5; 269 in 4:15-mc-5).

Fourteen days from the date of today's Order, the Clerk shall disburse $138,897.65 (plus any interest earned on that amount while the funds were in the Court's registry) to Frey individually, $60,026.60 to Regency Realty, LLC (plus any interest earned on that amount while the funds were in the Court's registry), and $25,117.81 (plus any interest earned on that amount while the funds were in the Court's registry) to Frey as Trustee of the Robert J. Frey Living Trust, unless any party files a notice of appeal relating to today's rulings. If any party seeks a stay pending an appeal of today's rulings, they shall

file a motion with citation to applicable authority with the notice of appeal. Once the disbursements are made, they shall all be applied to reduce the judgment that is now held by Frey as Trustee. The funds shall be applied first to accrued interest as of the date of the disbursement, then to principal. Frey should coordinate with the Clerk to ensure that the Clerk has all of the information necessary to process the disbursements, including tax identification numbers.

IT IS SO ORDERED, this 14th day of March, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
